QUAN HING SUN et al. v. WHITE, Commissioner of Immigration.*

(Circuit Court of Appeals, Ninth Circuit. October 11, 1918.)

No. 3039.

1. CITIZENS ⬦⬦9—WHO ARE CITIZENS—CHILDREN OF CITIZENS BORN ABROAD.
    Rev. St. § 1993 (Comp. St. 1916, § 3947), providing that "all children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States," makes no distinction as to race or place of birth.

2. CONSTITUTIONAL LAW ⬦⬦215—DISCRIMINATION—APPLICANTS CLAIMING CITIZENSHIP—CHILDREN OF CHINESE BIRTH.
    To apply to a person of Chinese birth, seeking admission on the ground that his father was a citizen of the United States, a different procedure from that provided by the immigration statute and applied to all others making similar claim, is an unlawful discrimination.

3. ALIENS ⬦⬦25—EXCLUSION—CHILDREN OF CITIZENS BORN ABROAD.
    A regulation of the Department of Labor, adopted under the Chinese exclusion laws, excluding from admission persons of Chinese birth, although their fathers are or were citizens of the United States, unless they are dependent members of the father's household, is without warrant of law.

Appeal from the District Court of the United States for the First Division of the Northern District of California; M. T. Dooling, Judge.

Habeas corpus by Quan Hing Sun and others against Edward White, Commissioner of Immigration for the Port of San Francisco.

From an order discharging the writ, and remanding petitioners for deportation, they appeal. Reversed.

George A. McGowan, of San Francisco, Cal., for appellants.

Annette Abbott Adams, U. S. Atty., of San Francisco, Cal., C. F. Tramutolo, Asst. U. S. Atty., of San Jose, Cal., and Caspar A. Ornbaun, Asst. U. S. Atty., of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The appellant, Quan Hing Sun, a child eight years of age, arrived at the port of San Francisco, Cal., on the steamship China March 11, 1916, in charge of his uncle, Quan Foo. He applied for admission to the United States as the son of Quan Hay, deceased, who was a native-born citizen of the United States. His claim was that, although born in China, he was the son of a citizen of the United States, and under section 1993 of the Revised Statutes (Comp. St. 1916, § 3947) entitled to enter the United States.

The appellant's father, Quan Hay, died in Los Angeles, Cal., February 25, 1914. His mother, Wong She, died in China two or three months after the death of the father. The appellant's uncle, Quan Foo, was born in the United States. He visited China in 1906, and again in 1914, returning to the United States with the appellant in March, 1916.

The appellant was first examined as to his right to admission under the provisions of the immigration laws, and was found qualified to be admitted. He was then examined by the immigration inspector under the Chinese Exclusion Act, and his application for admission denied, on the ground that the applicant had failed to establish the fact that he was the son of Quan Hay; but it was stated by the Inspector that the applicant was excluded under rule 9 (f) of the then rules governing the admission of Chinese. This finding was approved by the Commissioner of Immigration, and upon appeal to the Secretary of Labor the decision of the Immigration Commissioner was affirmed.

It is claimed on behalf of appellant that the action of the officers of the Immigration Bureau and of the Department of Labor in holding the appellant for deportation was an abuse of discretion committed to them by statute, and resulted in denying him a fair hearing, to which he was entitled under the law. The objection to the hearing is that under the regulations prescribed by the Commissioner General of Immigration a different procedure was pursued by the immigration officers in determining appellant's right to admission into the United States from that pursued under other statutory regulations for determining the right of persons other than those of the Chinese race to enter the United States.

There is such a difference in procedure. Under the provisions of the act of Congress of February 20, 1907 (34 Stat. 898, c. 1134), as amended by the act of March 26, 1910 (36 Stat. 263, c. 128), and March 4, 1913 (37 Stat. 736, c. 141), a person claiming to be a citizen of the United States arriving at a port of the United States, who may not appear to the examining immigration inspector at the port of ar-

rival to be clearly and beyond a doubt entitled to land, will be detained for examination in relation thereto by a board of special inquiry. The same procedure is provided when the decision of the inspector is favorable to the admission of the alien and such decision is challenged by any other immigration officer. Act Feb. 20, 1907, c. 1134, § 24, 34 Stat. 906 (Comp. St. 1916, § 4273). This special board of inquiry is appointed by the Commissioner of Immigration, with the approval of the Secretary of the Department of Labor, and consists of three members selected from the immigration officials. Such boards have the authority to determine whether a person who has been duly held shall be allowed to land or shall be deported. An appeal lies from the decision of the board, through the Commissioner of Immigration and the Commissioner General of Immigration, to the Secretary of the Department of Labor. Act Feb. 20, 1907, § 25, 34 Stat. 906 (Comp. St. 1916, § 4274).

The regulations governing the admission of a person of the Chinese race provide for an examination by an officer (Act May 6, 1882, c. 126, § 9, 22 Stat. 60 [Comp. St. 1916, § 4296]), who makes a report on the case to the Commissioner of Immigration. This officer determines whether the person shall be admitted or not. An appeal from adverse decisions lies to the Secretary of the Department of Labor (rules 3 and 5 governing the admission of Chinese). In this examination of a person of the Chinese race, there is no intervening board of special inquiry between the inspector and the Commissioner of Immigration, or the other superior officers of the Department of Labor. We are advised that in practice there is this further difference: The immigration procedure for persons other than Chinese allows a complete inspection of the entire record, including the findings and reasonings of the board of special inquiry. The practice under the Chinese Exclusion Law withholds this record from the applicant for admission, only advising him of the final result.

[1] The procedure under the immigration statute is provided by law. The regulations under the Chinese Exclusion Act are provided by regulations of the Department of Labor. The appellant claimed the right to enter the United States under section 1993 of the Revised Statutes (Comp. St. 1916, § 3947), providing as follows:

"All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States."

[2] This statute applies to all persons alike, without any discrimination as to race or place of birth. To apply to a person of Chinese birth the procedure provided by the rules of the Department of Labor governing the admission of Chinese, for the purpose of determining whether the applicant's father was a citizen of the United States, and to all others making this claim the procedure provided by the immigration statute, is plainly a discrimination against the person of Chinese birth, and the hearing measured by the immigration statute distinctly unfair. This unfair procedure is made clear by the proceedings in this case.

[3] When the applicant arrived in the United States on March 11,

1916, the rules of the Department of Labor governing the admission of Chinese were the rules approved October 15, 1915. It was provided in rule 9 (f) of said rules that "the dependent members of the household of a Chinese-American citizen may be admitted to the United States" upon certain conditions therein provided with respect to the proof that shall be exacted in such cases. These conditions were as follows:

"Male children 14 years of age and under shall be conclusively presumed to be members of the father's household. Male children 15 years of age or over and under 18 years of age shall be presumed to be members of the father's household, but such presumption shall be subject to rebuttal. Such children 18 years of age and under 21 years of age shall be required to prove affirmatively and to the satisfaction of the Secretary of Labor that they are members of the father's household. No Chinese male 21 years of age or over shall be permitted to be admitted to the United States otherwise than of his own individual status or capacity as a member of the exempt classes, and upon exhibition of the certificate prescribed by section 6 of the Act of July 5, 1884, irrespective of whether he is or is not a member of the household of his exempt father."

All other children of Chinese-American citizens were excluded under rule 2, which provides:

"Rule 2. Only those Chinese persons who are expressly declared by the treaty and laws relating to the exclusion of Chinese to be admissible shall be allowed to enter the United States, and those only upon compliance with the requirements of said treaty and laws and of rules issued thereunder."

We know of no law making a race distinction in American citizenship, and by reason of such distinction excluding the sons of citizens of the United States of Chinese birth who, seeking to enter the United States, if over 21 years of age, are not permitted to do so, except upon the exhibition of a certificate prescribed by section 6 of the act of May 6, 1882, c. 126, 22 Stat. 58, as amended July 5, 1884 (23 Stat. 116, c. 220 [Comp. St. 1916, § 4293]) or if under 21 years of age, except upon evidence that they are dependent members of the household of such American citizen.

That there is no such law is practically admitted by the Department of Labor in the adoption of new rules in which these conditions are omitted. The new rules were adopted May 1, 1917, in which it is provided in rule 9, subdivision 1:

"The lawful children of an American citizen of the Chinese race partake of their father's citizenship, and are entitled to admission into the United States."

No conditions are imposed, except to retain a provision of the previous rule safeguarding the United States against false and fraudulent claims of citizenship as follows:

"In every such case convincing evidence with respect to such citizenship and relationship shall be exacted."

The inspector, who examined the applicant in this case, proceeding under the rules of October 15, 1915, reported:

"He is but a child, and neither of his parents are in this country, both in fact, being dead, and the provisions of rule 9 would prevent his landing.

The, testimony of all witnesses was, however, taken in order to ascertain, if possible, if the relationship claimed exists."

The immigration inspector refers to the testimony upon the feature of the case last referred to, and reaches the conclusion that such relationship had not been established, concluding his report as follows:

"In my opinion the relationship claimed does not exist, and even if rule 9 did not prohibit the applicant's landing. I would recommend denial based upon applicant's failure to establish that he is the son of Quan Hay."

Upon this report the Commissioner of Immigration rendered the following decision:

"In the matter of the application of the Chinese person, Quan Hing Sun, for admission to the United States as the minor son of a native, the existence of the relationship claimed to his alleged father is not established to my satisfaction, and it further appears that both parents of the applicant are dead, and he is therefore inadmissible under the provisions of rule 9."

From the decision of the Commissioner of Immigration counsel for the appellant appealed to the Secretary of Labor at Washington. The final decision of that official is not in the record, but the Assistant Commissioner General of Immigration advised the Commissioner of Immigration at San Francisco that the Secretary had affirmed the excluding decision of the latter, "on the ground that the relationship had not been established." Whether the decision of the Secretary of Labor was oral or written does not appear.

Passing over the informality in such a disposition of the appeal, the question remains: Was this decision based solely upon the objection that it had not been established that the appellant was the son of Quan Hay, a native-born citizen of the United States, or was it influenced by the fact that Quan Hay was dead, and the appellant was not, at the time of his arrival in the United States, a "dependent member" of his father's household, as required by rule 9 (f)? The exclusion under that rule appears to have been considered, and apparently was an element in the decision of the inspector of immigration and the Commissioner of Immigration at San Francisco, and it is not clear that it did not influence the Department of Labor at Washington.

We are of the opinion that in such an inquiry it should distinctly appear that the department was not influenced in its decision by considerations not authorized by law. The decisions of Judge Dooling in Ex parte Wong Foo (D. C.) 230 Fed. 534, Ex parte Leong Wah Jam (D. C.) 230 Fed. 540, Ex parte Ng Doo Wong (D. C.) 230 Fed. 751, Ex parte Lee Dung Moo (D. C.) 230 Fed. 746, and Ex parte Tom Toy Tin (D. C.) 230 Fed. 747, we think state a rule of caution applicable in all fairness to such a case. The judge said (Ex parte Wong Foo, supra):

"The inquiry of the Immigration Department should be directed, of course, in good faith to the ascertainment of that fact [that the applicant is the son of an American citizen]. The burden of proving such a relationship is entirely upon the applicant, but that burden should not be increased by throwing extraneous matters into the scale against him."

We are also of the opinion that there is but one procedure applicable to such an inquiry, and that is the procedure provided by the im-

migration statute. Upon the record in this case we do not think appellant had such a fair hearing before the Immigration Department as the law provides.

The decree of the District Court will be reversed, with direction to issue the writ as prayed for, and such further proceedings as will not be inconsistent with the opinion. It is so ordered.