### DONG AH LON v. PROCTOR, Commissioner of Immigration and Naturalization.

#### No. 9355.

Circuit Court of Appeals, Ninth Circuit.

April 3, 1940.

Karl P. Heideman and John F. Walthew, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., Gerald Shucklin, Asst. U. S. Atty., both of Seattle, Wash. (J. P. Sanderson, of Seattle, Wash., Immigration and Naturalization Service, on the brief), for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Dong Ah Lon on August 19, 1938, arrived at the Port of Seattle from China and applied for admission to the United States as the foreign-born daughter of Dong Toy, a deceased citizen of the United States.

The applicant and three of her alleged brothers appeared and testified before the Board of Special Inquiry, which Board denied applicant's admission. Applicant appealed to the Secretary of Labor, who dismissed the appeal. Thereupon applicant petitioned the District Court for a writ of

habeas corpus which was denied. This appeal is from that order.

The original record of the Secretary of the Department of Labor and all exhibits, both on the hearing before the Board of Special Inquiry at Seattle and on submission of the record on appeal in the matter of said application for admission, were made a part of the return to the writ of habeas corpus and are a part of the record before us.

It is conceded that during the life of the alleged father of appellant he was a citizen of the United States. It is likewise conceded that if appellant is the blood daughter of her claimed father she is entitled to admission with the status of a citizen under R.S. § 1993, 8 U.S.C.A. § 6. Therefore, the only question here is: Did the appellant satisfactorily establish such relationship?

The testimony of the alleged brothers, who were witnesses for applicant, differed in many particulars from that of applicant, and upon submission of the matter the Board found that the relationship of the appellant, Dong Ah Lon, to the alleged father, Dong Toy, had not been satisfactorily established. There were many discrepancies relating to family history which are pointed out by the Board of Special Inquiry but which were passed over as attributable to applicant's ignorance or faulty memory. Concerning the other contradictions upon which the order of deportation is based the Board of Review had this to say:

"For the other discrepancies which the testimony shows it does not appear possible to make any such excuse for these involve neither matters of hearsay nor memory of events in the past but matters about which there should be agreement as a matter of course if the applicant and her witness alleged brothers had had their home in the same house in the same village as claimed. The applicant and her witness alleged brothers agree that she was born and has lived all the twenty-one years of her life in the Ping On village. She and these alleged brothers describe this village as consisting of fifteen dwellings and one schoolhouse, the houses arranged in five rows of three houses each, the village facing north with the so-called head to the west and the so-called tail to the east and she and these witnesses agree that their home is the first house on the second row from the head or west side of the village.

The applicant states that the village schoolhouse is located at the head or west side of the village and that the village toilet structures are behind the schoolhouse at the head or west side of the village and that there never was a schoolhouse at the east or tail side of the village. The witness alleged brothers agree that the schoolhouse is at the other side, that is at the east or tail side of the village and that the toilets are at the west side not behind the schoolhouse but at the opposite side of the village and these witness alleged brothers testify that there has never been a schoolhouse in the location which the applicant gives for the schoolhouse at the west or head side of the village. While it is true that the schoolhouse in which the applicant claims to have gone to school for a couple of years is located elsewhere than in the home village, yet it would seem unreasonable to believe that she and her alleged brothers could have had their home in the same tiny village when they so definitely disagreed as to whether the schoolhouse is at the same side of the village where the toilet structures are or at the opposite side of the village.

"Also, it seems unreasonable to believe that this applicant and her alleged brothers could have had their home in the same small village and disagree as to the makeup and location of all of the alleged neighboring households in the dwellings said to be nearest to that in which the applicant and her alleged brothers claim to have had their home."

Section 17 of the Immigration Act of February 5, 1917, c. 29, 39 Stat. 887, 8 U.S.C.A. § 153, provides that: " * * * In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor. * * *"

The record discloses that appellant was accorded full opportunity to present her case. The charge of unfairness rests upon the claim that the Board ignored the evidence favorable to appellant while emphasizing the facts that are unfavorable to her.

In the case of Lum Sha You v. United States, 9 Cir., 82 F.2d 83, this court said: "The rule is well established that cases, such as the one at bar, present but one issue. Such issue is whether or not the administrative officers manifestly abused the

**810**

power of discretion conferred upon them, and in considering such question it is not the function of this court, in a habeas corpus proceeding, to weigh the evidence, or to inquire into the sufficiency of the probative facts. Chin Ching v. Nagle (C.C.A. 9) 51 F.2d 64."

■ We do not determine that, as a matter of fact, Dong Ah Lon is not the true daughter of Dong Toy. However, the discrepancies here shown having been considered sufficient by the Board to warrant the action taken, which was for it to determine, and the determination not being arbitrary or unreasonable, we can not say that applicant was not given a fair hearing by the Board or that the District Court committed error in sustaining the findings of the Board. Reasonable men might readily disagree as to the probative effect of these discrepancies. When there is possibility of such disagreement, the findings of administrative boards will not be disturbed.

■ It is not sufficient that we might have arrived at a conclusion different from that of the Immigration Board; unless it appears that the departmental officers to whom Congress has entrusted the decision of appellant's claim have denied her opportunity to establish her citizenship at a fair hearing, "or acted in some unlawful or improper way or abused their discretion, their finding upon the question of citizenship was conclusive and not subject to review, and it was the duty of the court to dismiss the writ of habeas corpus without proceeding further." Quon Quon Poy v. Johnson, 273 U.S. 352, 358, 47 S.Ct. 346, 348, 71 L.Ed. 680.

We cannot say that the applicant was denied a fair hearing on the question of her right to enter the United States.

Affirmed.